**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILLIP C. SILAS,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 19-16785 (SDW)<br><br>**OPINION**<br><br>October 27, 2020 |

**WIGENTON,** District Judge.

  Before the Court is Plaintiff Phillip C. Silas's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Ricardy Damille's ("ALJ Damille") partial denial of Plaintiff's claim for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Damille's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

I.      **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

On July 27, 2015, Plaintiff filed an application for SSI, alleging disability as of August 1, 2010.[1]  (Administrative Record ("Record" or "R.") 29, 53, 259.)  His claim was denied initially on December 16, 2015, and again on reconsideration on June 21, 2016.  (R. 60, 75, 78-82, 88-90.)  Plaintiff appealed, and ALJ Damille held an administrative hearing in Newark, New Jersey on April 17, 2018.  (R. 27-52.)  There, Plaintiff appeared with counsel and testified regarding his conditions.  (*Id.*)  On July 24, 2018, ALJ Damille issued a Partially Favorable decision, granting disability beginning on December 1, 2017,[2] but denying disability prior to that date.  (R. 20.)  Plaintiff requested that the Appeals Council review this decision.  (R. 1-3.)  On June 14, 2019, the Appeals Council declined Plaintiff's request.  (*Id.*)  Plaintiff now requests that this Court reverse the Commissioner's decision.  (D.E. 1.)

   B. **Factual History**

Plaintiff is fifty-seven years old and currently lives in Elizabeth, New Jersey.  (R. 35; D.E. 1.)  The Record demonstrates Plaintiff's history of hip pain and related medical issues, which are now associated with his disability claim.  (*See, e.g.*, R. 38, 272.)  The following is a summary of the evidence.

Plaintiff has experienced hip pain since 1978, when he was involved in a car accident and a underwent an unsuccessful surgery to correct his injuries.  (R. 336, 351, 434.)  These events resulted in a limb length discrepancy of two centimeters.  (R. 35-38, 450, 487.)  Due to this discrepancy, Plaintiff wears orthopedic shoes.  (*See, e.g.*, R. 38-39, 336, 434, 558-59, 515.)

---

[1] Plaintiff acknowledges that under relevant regulations, he is ineligible to receive SSI benefits predating his application.  (D.E. 17 at 1 n.1.)
[2] The ALJ determined that Plaintiff became disabled on December 1, 2017, because Plaintiff's "age category changed." (R. 20.)  Plaintiff's birthday is actually December 2, 2017.  (R. 34-35, 336.)

Although Plaintiff previously received SSI benefits, he has been in prison intermittently over the last twenty years, and his benefits were terminated when his incarceration lasted more than a year. (*See* R. 41, 215.)  Plaintiff testified that he has not been employed since the 1990s.  (R. 35-36, 41; *but see* R. 202, 211 (noting Plaintiff worked in 2006).)

Prior to 2015, prison doctors examined Plaintiff and reported that he was engaged in daily aerobic activity and could work in food service—as long as the work involved no climbing, squatting, or walking on wet or uneven surfaces.  (R. 293-96, 305, 341.)  These doctors described him as "well nourished" with "no acute [physical] distress."  (R. 284, 292, 318.)  Plaintiff was also prescribed new orthopedic shoes and noted he was "very happy" with his gait.  (R. 336.)

Plaintiff was released from prison in July 2015, and in the months that followed, medical professionals recommended a course of treatment for Plaintiff's foot health and hip pain.  These reports, however, present inconsistencies in pain level, symptom intensity, and observed gait.  Soon after his release from prison, Plaintiff saw Dr. Anil Khandelwal ("Dr. Khandelwal").  (R. 375, 515.) On July 30, 2015, Dr. Khandelwal reported that Plaintiff was experiencing "mild pain," assessing him at 4/10 on a pain scale.  (R. 375.)  Although Dr. Khandelwal presumed Plaintiff would have difficulty walking due to his short leg, he expected that Plaintiff would be able to engage in gainful employment starting July 29, 2016.  (R. 375, 515.)  Functions reports submitted by Plaintiff and his friend Lonnie Davis ("Ms. Davis") from this time also indicate that Plaintiff was able to care for his own grooming, cook simple meals, visit friends and family, attend church, and shop for groceries with some assistance.  (R. 216-231, 247-48.)  Plaintiff self-reported that his conditions affected his ability to lift, walk, squat, sit, climb stairs, stand, bend, and kneel.  (R. 220-21.)

Testing in August 2015 showed that Plaintiff's left hip was unchanged since 2011, and that it showed signed of osteoarthritis. (R. 409, 446.) On August 19 and 24, 2015, Plaintiff saw a podiatrist and orthopedist, respectively, and during those visits reported no stiffness and no joint, hip, heel, toe, ankle, or knee pain. (R. 364-65, 368, 394-96.) His gait pattern was straight, and he had full muscle power (5/5) and exhibited 4/5 hip flexion. (R. 365, 368, 395.) Due to his left hip's post-traumatic arthritis and malunion of the femoral neck, Plaintiff's orthopedist recommended following up in one month to discuss surgery, but recorded that Plaintiff was in "no acute distress," and suffered from no "numbness or tingling." (R. 396-97.) Plaintiff was given orthotics and orthopedic shoes. (R. 400, 558.)

On September 21, 2015, an MRI showed Plaintiff had mild dextroscoliosis, disc herniation, facet degenerative changes, and inflammation, and Dr. Khandelwal cleared Plaintiff for surgery. (R. 401, 403, 434, 448.) Plaintiff returned to prison some time thereafter. (*See* R. 564-66.)[3] The Record is sparse for the next few years, and Plaintiff does not seem to have undergone the proposed hip surgery.

On November 29, 2017, Dr. William Landre examined Plaintiff and found that he had difficulty walking due to left hip pain, but was "ambulating normally" with "normal gait and station," and exhibiting normal motor strength and tone. (R. 567, 574.) On December 8, 2017, Dr. Shabnam Khety noted that Plaintiff's exercise level was "moderate." (R. 571.) He also noted that Plaintiff was able to care for himself. (*Id.*)

**C. Hearing Testimony**

At the administrative hearing, ALJ Damille heard testimony from Plaintiff, his counsel, and Vocational Expert Jackie L. Wilson ("VE Wilson"). (R. 27-52.) Plaintiff testified that due to

---

[3] Perhaps because of his incarceration, Plaintiff did not appear for his consultative examination in November 2015. (R. 58, 78.)

4

the car accident, he could not "stand and walk too long" as it risked straining his back. (R. 38.) Plaintiff testified that he wears a knee brace, wears orthopedic shoes, uses a cane, has arthritis, and takes several medications. (R. 38-40.) Plaintiff also testified that he has walking limitations and relies on his sister for housework and many of his meals. (R. 43-44.)

VE Wilson testified that a hypothetical individual matching Plaintiff's vocational profile and limitations, as specified by the ALJ, could perform representative light, unskilled occupations in the national economy, such as Cashier II and Information Clerk. (R. 47-48.) She also testified that the use of a cane would preclude Plaintiff from these occupations. (R. 49-50.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to an ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination

of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy.  20 C.F.R. §§ 404.1520(g)(1)

(citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A.

On July 24, 2018, ALJ Damille issued a decision concluding that Plaintiff was not disabled between August 1, 2010 (the "alleged onset date") and December 1, 2017, but concluding that Plaintiff was disabled beginning on December 2, 2017 ("established onset date").[4] (R. 16, 20) ALJ Damille's decision properly applied the five-step disability test within the meaning of the Act. There is no basis for reversal or remand, because the ALJ's findings are supported by substantial evidence.

At step one, ALJ Damille determined that Plaintiff had not engaged in SGA since the alleged onset date. (R. 15.) At step two, ALJ Damille found that Plaintiff had the following severe impairments as of the alleged onset date: a history of left hip fracture, arthritis, degenerative disc disease of the lumbar spine, and obesity. (R. 15.) The ALJ concluded that Plaintiff's hypertension was non-severe. (R. 16.)

At step three, ALJ Damille found that Plaintiff did not have an impairment or combination of impairments that "me[t] or medically equal[ed] the severity of the listed impairments" in 20

---

[4] As noted above (*supra* 2 n.2) ALJ Damille erroneously found Plaintiff turned 55 years old on December 1, 2017, instead of December 2, 2017, however, as Plaintiff acknowledges, this mistake is not material. (D.E. 17 at 1 n.1.) For the purposes of this Opinion, this Court will operate under the assumption that ALJ Damille meant December 2, 2017, and refer to this date as the established onset date.

9

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  (R. 16.) The ALJ noted that the Record failed to document: (1) "gross anatomical deformity and chronic joint pain"; (2) "medically acceptable" evidence of joint degeneration that would limit Plaintiff's ability to perform "fine and gross movements effectively"; (3) "nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, [or] lumbar spinal stenosis"; or (4) any "impairment[s] that, in combination with obesity, [could] meet[] the requirements of a listing."  (*Id.*)

Next, after evaluating the Record, the ALJ determined that Plaintiff was "capable of the exertional demands of light work" as defined in 20 C.F.R. 416.967(b).  (R. 16-18.)  ALJ Damille noted, however, that Plaintiff has additional limitations.  For example, the ALJ found that Plaintiff could never crawl, "climb ladders, ropes, or scaffolds."  (R. 16-17.)  ALJ Damille based his RFC conclusion on facts from the Record, including the following: (1) a November 2017 examination that described Plaintiff's normal "gait and station"; medical notes suggesting Plaintiff could "tolerat[e] [pain] medication … without adverse effects"; and Plaintiff's failure to present medical evidence that "mention[ed] [use] of a cane."  (R. 18-19.)

Although ALJ Damille noted that Plaintiff's impairments could reasonably be expected "to cause the alleged symptoms," he concluded that the Record did not support the claimed "intensity, persistence and limiting effects" of those symptoms.  (R. 17-18.)  First, the ALJ acknowledged that the Record demonstrated Plaintiff's "history of left hip fracture, arthritis, and degenerative disc disease," which were "severe impairments" that caused Plaintiff "resulting limitations."  (R. 18.)  Second, the ALJ explained his decision to give less weight to certain pieces of evidence, relying on medical records from Plaintiff's treating physicians, function reports, and the non-examining DDS Consultants' notes.  (*See* R. 18-19.)  The ALJ explained that certain medical

records were conclusory in nature, and others were not based on in-person medical examinations. (R. 18.)  The ALJ also explained that, although he credited Ms. Davis's testimony to the extent it was based on her "personal observation[s]," Ms. Davis "had no professional training."  (R. 18-19.)

At step four, the ALJ found that Plaintiff had no past relevant work.  (R. 18.)  At step five, the ALJ concluded that, based on Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Plaintiff was not disabled prior to the established onset date, because he could have performed jobs that existed in significant numbers in the national economy.  (R. 19-20.)  However, the ALJ found that, at the established onset date, Plaintiff's "age category changed to an individual of advanced age."  (R. 19.)  Relying on the VE's testimony, ALJ Damille detailed the availability of light work jobs for the younger age category and the older age category.  (R. at 19-20.)  Then, the ALJ concluded that: (1) prior to December 2, 2017, Plaintiff remained capable of performing jobs that existed in significant numbers in the national economy, but (2) upon moving to the higher age category, these jobs no longer existed in significant numbers.  (*Id.*)  Therefore, the ALJ determined that as of December 2, 2017, Plaintiff was rendered disabled and entitled to benefits.  (R. 19-20.)

**B.**

On appeal, Plaintiff seeks reversal of the Commissioner's decision, or remand for a new hearing, contending that the ALJ failed to (1) base his RFC determination on substantial evidence, (2) properly account for Plaintiff's cane use, (3) properly analyze Plaintiff's obesity, or (4) properly employ the vocational rules in a borderline age situation.  (D.E. 17 at 10-11, 22.)  After considering each argument in turn, this Court finds them unpersuasive.

Plaintiff first argues that ALJ Damille's RFC determination was not based on substantial evidence.  (D.E. 17 at 10-13.)  The ALJ, however, accounted for Plaintiff's full medical history

11

before concluding that his overall condition was not of a disabling character. The ALJ summarized Plaintiff's history of hip pain (R. 18.), identified medical records discussing Plaintiff's ability to ambulate normally and maintain a normal gait and station (R. 17-18.), and noted Plaintiff's own testimony that he could make himself basic meals, care for his own personal grooming, and conduct other basic tasks (R. 17).

Where the ALJ gave less weight to a medical source of evidence, he explained the basis for his decision to do so. (*See* R. 18-19.) The ALJ also properly followed the required two-step process for evaluating Plaintiff's subjective complaints: first evaluating the medical impairment to determine whether it could be expected to produce the complained of symptoms, and next evaluating the claimed intensity and persistence of those symptoms. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). While following this process, the ALJ accounted for Plaintiff's claims regarding the intensity of his hip pain, identified contradictory evidence regarding those symptoms in the record, and then cogently explained his decision to credit evidence that suggested Plaintiff's symptoms were not fully disabling. (R. 17-19; *see also* 20 C.F.R. § 404.1529).

Plaintiff also takes issue with the ALJ's specific conclusions regarding his cane usage. (D.E. 17 at 16-18.) Nevertheless, the ALJ properly analyzed the Record, correctly concluding that Plaintiff had only submitted subjective evidence of his cane usage, such as Ms. Davis's function report, rather than objective medical documentation establishing that the cane was "medically necessary." (R. 19, 220, 230.) In response, Plaintiff did not provide objective medical documentation. (D.E. 17 at 10, 21 (arguing, without citing to the Record, that Plaintiff's cane use was "unchallenged" and "uncontradicted")). Because the ALJ gave Plaintiff's subjective complaints "serious consideration" but found them unpersuasive, this Court will defer to the RFC determination. *Rowan v. Barnhart*, 67 Fed. App'x. 725, 729 (3d Cir. 2003).

For similar reasons, Plaintiff's argument that the ALJ failed to meaningfully analyze Plaintiff's obesity fails. (D.E. 17 at 19-21.) Although Plaintiff never specifically alleged disability due to obesity (*see* D.E. 20 at 18), ALJ Damille nevertheless conducted a detailed analysis and properly concluded that Plaintiff's obesity did not further impair his ability to perform a limited range of light work. (R. 16, 18.) Plaintiff fails to identify objective medical evidence that disproves this conclusion or suggests additional functional limitations tied to his obesity.

Finally, Plaintiff claims that the ALJ mechanically applied the vocational rules in a borderline age situation. (D.E. 17 at 22.) However, nothing in the record "warrant[s] the consideration of this case as borderline."[5] *Prieto v. Colvin*, Civ. No. 14–4998, 2015 WL 4602965, at *6 (D.N.J. July 30, 2015). Nor does the record suggest that Plaintiff was mere days to months away from a higher age category, as intended by the Act. (*See id.*)

ALJ Damille properly analyzed Plaintiff's age alongside the record evidence, concluding that until Plaintiff entered an advanced age category, his age did not negate his RFC to perform a limited range of light work.[6] (R. at 19-20.) In response, Plaintiff failed to present any vocational adversities that would justify prematurely applying a higher age category. (*See generally* D.E. 17.) Therefore, the ALJ's conclusion that Plaintiff qualified for benefits on December 2, 2017, but not before, was appropriate.

## IV.     CONCLUSION

---

[5] This is not the first time that Plaintiff's counsel has advanced an incorrect "borderline age situation" argument, and in doing so, miscited the relevant statutory authority. (*Compare* D.E. 17 at 23 *with Loza v. Comm'r of Soc. Sec.*, Civ. No. 15-8964, 2017 WL 714349, at *2 (D.N.J. Feb. 22, 2017) ("Plaintiff cites 'HALLEX 5-302A,' which does not presently exist.")).

[6] Moreover, even in a borderline age situation, the use of the higher age category is "not mandatory." (D.E. 17 at 23; *see also* C.F.R. § 416.963(b)).

Because this Court finds that ALJ Damille's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties